**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**ROBERT D.,**

                    **Plaintiff,**

            **v.**                                     **Civil Action 3:23-cv-001**
                                                       **Judge Thomas M. Rose**
                                                       **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

                    **Defendant.**

                    <u>**REPORT AND RECOMMENDATION**</u>

        Plaintiff, Robert D., brings this action under 42 U.S.C. § 405(g) seeking review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").   For the

following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of

Errors and **AFFIRM** the Commissioner's decision.

**I.      BACKGROUND**

        In September 2020 and October 2020, Plaintiff protectively filed his applications for DIB

and SSI, alleging that he was disabled beginning August 24, 2018, due to chronic left knee pain

with swelling, depression, anxiety, and history of two back surgeries.  (R. at 189–98, 216–17, 267).

After his applications were denied initially and on reconsideration, the Administrative Law Judge

(the "ALJ") held a hearing on August 2, 2021.  (R. at 33–59).  The ALJ denied Plaintiff's

applications in a written decision on September 17, 2021.  (R. at 10–32).  When the Appeals

Council denied review, that denial became the Commissioner's final decision.  (R. at 1–6).

        Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the

administrative record, and the matter has been fully briefed. (Docs. 8, 9, 10, 11).

### A.  Relevant Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as follows:

[Plaintiff] testified that he is married and has one minor child, age 17. He is still unable to work due to his limited mobility from low back and knee problems. Low back pain radiating to the left lower extremity interrupts sleep and has worsened after surgery despite postoperative injections and physical therapy. [Plaintiff] also takes pain medication which causes dizziness. He can lift no more than 15 pounds and can stand no longer than 30 minutes at one time and can walk only about 10 minutes. [Plaintiff] stated that he is able to sit for 20 minutes before needing to alternate positions. He can climb stairs only with a railing. Mentally, [Plaintiff] has depression and anxiety but receives no treatment other than medication from his primary care provider.

[Plaintiff] does not have a driver's license and has never had one because of his DUI history. A typical day involves little activity beyond laying on his back. [Plaintiff] relies on his wife for some help with personal care like putting on socks, but he can shower alone. He uses a cane to ambulate at home and leans on a rolling cart when shopping.

(R. at 16).

### B.  Relevant Medical History

The ALJ summarized Plaintiff's medical records as to his physical impairments as follows:

*** [Plaintiff] did undergo a left knee surgical arthroscopy in March 2018 (Exhibit B2F at 27) which does not appear to have been entirely successful in view of ongoing complaints of uncontrolled pain, swelling and instability (Exhibits B1F at 59, 63, 88 / B2F at 45 / B3F at 65). Nevertheless, postoperative films of the left knee have demonstrated only "mild" osteoarthritis (Exhibit B1F at 90). Likewise, imaging of the knee "does not show anything significant or that would respond to [further] arthroscopy" (Exhibit B2F at 32) and specialty testing on examination has been negative (Exhibit B1F / B4F).

[Plaintiff] also has degenerative disc disease of the lumbar spine after 2 fusion surgeries in September 2016 (Exhibit B2F at 31) which reportedly provided only "short-term relief" (Exhibit B2F at 10) as [Plaintiff] alleges increased pain with longer distance ambulation, sitting or standing for prolonged periods, ascending and descending stairs, and climbing in and out of motor vehicles (id.). More recent imaging of the lumbar spine in April 2021 does indicate a disc bulge in combination with degenerative changes causing some effacement of the left L2 nerve root and possible minimal contact of the L4 nerve roots (Exhibit B3F at 5), and the possibility of additional surgical treatment has been noted (Exhibit B4F at 3). Medical records also reveal it is possible that [Plaintiff]'s lumbar spine problems are referring radicular pain to his left knee (Exhibits B1F at 94 / B4F at 7).

2

> In any event, measures in treatment for [Plaintiff]'s back and lower extremity pain complaints arising from post-laminectomy and chronic pain syndrome have remained conservative consisting of physical therapy (Exhibit B2F at 13, 53), bracing (Exhibit B2F at 50), injections, anti-inflammatories, over-the-counter medication, antineuralgics, and medical marijuana (Exhibits B1F at 5, 94 / B3F at 12, 66 / B6F).

(R. at 16–17).

## C.    The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through September 30, 2022.  (R. at 16).  And he has not engaged in substantial gainful employment since August 24, 2018, the alleged onset date.  (*Id.*).  The ALJ also determined that Plaintiff has the following severe impairments: left knee degenerative joint disease, lumbar degenerative disc disease, chronic pain syndrome, post-laminectomy syndrome, depression, anxiety, and borderline intellectual functioning (BIF).  (*Id.*).  Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment.  (R. at 19).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following limitations: (1) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (2) never climbing ladders, ropes, or scaffolds; (3) no exposure to unprotected heights or moving mechanical parts; (4) performing unskilled, simple, routine, and repetitive tasks; (5) no work at a production-rate pace (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner); (6) occasional contact with coworkers and supervisors; (7) no contact with the general public; and (8) occasional changes in an otherwise routine work setting explained in advance to allow time for adjustment to new expectations.

(R. at 22).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms the ALJ found that Plaintiff's symptoms are "largely unsubstantiated by convincing

objective medical evidence or clinical findings." (R. at 25).

The ALJ determined that Plaintiff is unable to perform his past relevant work as a floor installer, dump truck driver, store cashier, forklift operator, or production assembler. (R. at 25–26). The ALJ relied on testimony from a Vocational Expert ("VE") to determine that given Plaintiff's age, education, work experience and RFC, he was able to perform work that existed in significant numbers in the national economy, such as a document specialist, surveillance system monitor or touchup screener. (R. at 26–27). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since August 24, 2018. (R. at 27).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

In his Statement of Errors, Plaintiff contends that the ALJ's findings are not supported by substantial evidence.  More specifically, Plaintiff argues the ALJ erred by interpreting in functional terms a critical body of objective medical evidence that was not accounted for by any medical opinion.  (Doc. 9).  The Commissioner counters that the ALJ properly accommodated all of Plaintiff's substantiated limitations in the RFC finding, and her ultimate determination that Plaintiff was not disabled is supported by substantial evidence.  (Doc. 10).

A claimant's RFC is an assessment of "the most a [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012).  An RFC assessment must be based on all the relevant evidence in the case file.  *Id*.  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1]  20 C.F.R. § 416.913(a)(1)–(5).  Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 416.920c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 416.913(a)(2), (5).

familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Thus, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Notably, the role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

Here, the only medical opinions in the administrative record came from state agency reviewers that were issued in December 2020 and March 2021. (*See* R. at 61–66, 68–72). When evaluating these opinions, the ALJ determined:

> DDD reviewing physician, Mehr Siddiqui, M.D., assessed the [Plaintiff]'s physical limitations on December 19, 2020, based on the evidence of record without actually examining the [Plaintiff] (Exhibit B2A). According to Dr. Siddiqui, the [Plaintiff] has the "severe" physical impairments of degenerative disc disease, arthropathy, and osteoarthrosis. Dr. Siddiqui concluded that the [Plaintiff] retains the functional capacity to lift 20 pounds occasionally and just 10 pounds frequently. The [Plaintiff] can sit as much as 6 hours and stand/walk as much as 6 hours each during any given 8-hour workday. He can push/pull without limitation (within the specified lifting confines). The [Plaintiff] can frequently climb ramps and stairs, stoop, kneel, and crouch. He can occasionally climb ladders, ropes, or scaffolds and crawl (Exhibit B2A at 4-5).

> The record was then reviewed by DDD physician, Elizabeth Das, M.D. on March 15, 2021 (Exhibit B4A). According to Dr. Das, the [Plaintiff] has the "severe" physical impairments of degenerative disc disease, arthropathy, and osteoarthrosis. Dr. Das concluded that the [Plaintiff] retains the functional capacity to lift 20 pounds occasionally and just 10 pounds frequently. The [Plaintiff] can sit as much as 6 hours and stand/walk as much as 6 hours each during any given 8- hour workday. He can push/pull without limitation (within the specified lifting confines). The [Plaintiff] can frequently climb ramps and stairs, stoop, kneel, and crouch. He can occasionally climb ladders, ropes, or scaffolds and crawl (Exhibit B4A at 3-4).

> The assessments provided by both DDD reviewing physicians describe an underlying capacity for light exertion. By definition, light work involves lifting as much as 20 pounds occasionally and 10 pounds frequently. Light work can require

6

standing and walking as much as 6 hours during any given 8-hour workday. It may involve occasional stooping. Light work may require upper extremity use for grasping, holding, and turning objects (20 CFR 404.1567(b) and 416.967(b)). However, the record suggests more significant limitations of the [Plaintiff]'s physical capacity given his treatment history - which includes surgical interventions - for back and left knee problems. Drs. Siddiqui and Das also did not have the benefit of reviewing the longitudinal medical record which shows the [Plaintiff] has a disc herniation at the L1-L2 level putting pressure on the L2 nerve root above the previously fused area (Exhibit B4F at 3). In giving some deference to the associated manifestations of those ongoing issues, i.e., orthopedic and neuropathic pain (Exhibit B6F at 1) and restricted range of motion (Exhibits B1F at 9 / B4F at 2), the undersigned finds their assessments are not persuasive because light work is an overestimation of the [Plaintiff]'s physical capacity and that it is appropriate to reduce the exertional level to sedentary work. By definition, sedentary work is generally done in a seated position. It does not involve lifting more than 10 pounds. Sedentary work does not require standing or walking more than 2 hours during any given 8-hour workday. It does not involve any type of strenuous physical activity (20 CFR 404.1567(a) and 416.967(a)). The [Plaintiff] has "mild" swelling of the left knee and lumbar tenderness to palpation (Exhibit 4F at 2) though lumbar spine (and neck) have often demonstrated normal clinical alignment and stability with appropriate range of motion and strength (Exhibits B1F at 89 / B2F / / B3F at 65 / B4F). Similarly, he has evidenced good range of motion in all major joints (Exhibits B1F at 52 / B3F at 108, 128). Straight leg raise is negative bilaterally (Exhibit B2F at 47 / B6F). Muscle strength of the left lower extremity is minimally diminished at 4+/5; otherwise, the [Plaintiff] retains 5/5 strength throughout with no deficits or instability noted (Exhibit B2F at 47). Overall, he is neurologically intact with normal motor and sensory function and no focal deficits noted (Exhibits B1F at 71 / B3F / B4F). As such, no compelling evidence has been presented to show that the [Plaintiff] lacks the capacity to perform the basic walking, standing, sitting, and lifting requirements of sedentary work as defined.

Drs. Siddiqui and Das also imposed postural limitations which are reasonable given the nature of the [Plaintiff]'s most prevalent allegations. Nonetheless, in deference to those subjective complaints, the undersigned has reduced his movements and imposed additional limitations. Accordingly, it is found that the [Plaintiff] can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl no more than occasionally. He cannot climb ladders, ropes, or scaffolds. For safety considerations, the [Plaintiff] should not be expected to perform work around hazards such as unprotected heights or moving mechanical parts.

(R at 22–23).  Plaintiff does not challenge the ALJ's evaluation of the state agency reviewers' medical opinions but instead says that, by fashioning stricter limitations to the RFC than those opined by the reviewers, the ALJ impermissibly interpreted raw medical data.  (Doc. 9).

In support of his argument, Plaintiff relies chiefly on *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008), and its progeny.  (*Id.*).  In *Deskin*, the court noted that, in social security cases, the plaintiff bears the burden to prove disability.  But the Social Security Administration bears the burden to develop the record.  *Id.*  As part of that burden, it is "critical" that an ALJ obtain and consider residual functional capacity opinions offered by medical sources such as treating physicians, consultative examining physicians, medical experts who testify at hearings before the ALJ, or state agency physicians who reviewed the claimant's medical records. *Id.* at 911–12.  This means that an ALJ "may not interpret raw medical data in functional terms." *Id.* at 912.  With that principle in mind, the court set forth the following rule:

> ... where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Id.* at 912 (quotation marks and citation omitted).

At first, *Deskin* was not met with open arms.  Indeed, a judge in the same court rejected *Deskin*, finding it "not representative of the law" because the ALJ, "not a physician is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole."  *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010). Roughly a year and a half after *Henderson*, the author of *Deskin* reaffirmed the ruling but made several caveats regarding its application.  *See Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011).  *Deskin* potentially applies in only two circumstances. *See id.*; *see also Raber v. Comm'r of Soc. Sec.*, No. 4:12-cv-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (explaining post-*Deskin* application of the rule).  First, *Deskin* matters where

an ALJ made an RFC determination based on no medical source opinion.  *See Kizys*, 2011 WL 5024866, at *2.  Second, *Deskin* applies where an ALJ made an RFC based on an "outdated" medical source opinion "that does not include consideration of a critical body of objective medical evidence."  *Id.*

Importantly, simply because a case falls within the *Deskin* rule does not mean that the court must remand the matter.  At base, the "key inquiry" when deciding whether to remand under *Deskin*, is whether the ALJ "fully and fairly developed the record through a conscientious probing of all relevant facts."  *Bryant v. Comm'r of Soc. Sec.*, No. 3:15-CV-354, 2017 WL 489746, at *3–5 (S.D. Ohio Feb. 7, 2017) (quotation marks and citation omitted), *report and recommendation adopted sub nom. Bryant v. Berryhill*, No. 3:15-CV-354, 2017 WL 713564 (S.D. Ohio Feb. 22, 2017).  In this case, upon finding the state agency reviewers' opinion outdated (*see* R. at 22–23), the ALJ sufficiently developed the record.

The state agency reviewers formulated their opinion based on the evidence of record at the time—December 2020 and March 2021.  (R. at 61–66 (December 22, 2020 state agency reviewer report at initial level); 68–72 (March 15, 2021 state agency reviewer report at reconsideration level)).  But more evidence was then added to the record.  On March 2, 2021, Physician Assistant Holly Wolters examined Plaintiff and noted that he may need to consider medial and patellofemoral arthroplasty, but that "we need to have a full understanding of his lumbar spine issues prior to undergoing any sort of knee arthroplasty."  (*Id.* at 652).  So, in April 2021, an MRI of Plaintiff's lumbar spine was performed, revealing a disc herniation at the L1-L2 level putting pressure on the L2 nerve root above a previously fused area.  (*Id.* at 23, 484, 648).  During an April 13, 2021 appointment to go over the MRI results, Dr. Chad Weber referred Plaintiff for injections into his lumbar spine and noted that he "may require surgical intervention."  (*Id.* at 647–48).  Dr.

Weber also prescribed a steroid when he observed crepitus of the left knee during active and passive range of motion, medial joint line tenderness, terminal range pain, decreased sensation in the left lower extremity, restricted range of motion of the lumbar spine, and an antalgic gait.  (*Id.*). And in May 2021, Plaintiff complained that he was experiencing constant pain.  (*Id.* at 672).

Plaintiff says the ALJ could not use this evidence in fashioning an RFC without a medical opinion to interpret the new records because "while Plaintiff's examinations, imaging reports, and diagnostic records 'may appear minimal to the lay person, the ALJ was not qualified to translate this medical data into functional capacity determinations.'"  (Doc. 9 at 7 (*citing Mabra v. Comm'r of Soc. Sec.*, No. 2:11-CV-00407, 2012 WL 2319245, at *9 (S.D. Ohio June 19, 2012), *report and recommendation adopted*, No. 2:11-CV-00407, 2012 WL 3600127 (S.D. Ohio Aug. 21, 2012)). But the ALJ did not interpret raw medical data.  Rather, the ALJ reviewed the reports from medical professionals after Plaintiff underwent various examinations.  (R. at 22–23 (citing R. at 652 (March 2, 2021 report from physical examination); 484 (April 7, 2021 MRI report); 647–48 (April 13, 2021 report from physical examination)).  The only raw medical data—the MRI—was read and interpreted by a radiologist.  *See, e.g., Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726–27 (6th Cir. 2013) (finding no error where ALJ relied on radiologist's interpretation of x-rays without the further assistance of a medical expert, stating that while the x-rays were raw medical data, the radiologist's report was not).  In fact, the MRI was not itself included in the report, so the ALJ relied solely on the doctor's interpretation.

Because this newer medical evidence was not raw medical data, the ALJ did not need another medical professional to opine as to the new records indications of Plaintiff's functional capacity.  *Montgomery v. Comm'r of Soc. Sec.*, No. 2:20-CV-4489, 2021 WL 5413962, at *8 (S.D. Ohio Nov. 19, 2021), *report and recommendation adopted*, No. 2:20-CV-4489, 2021 WL 5919128

10

(S.D. Ohio Dec. 14, 2021) ("ALJs are not required to order a consultative examination if there is a considerable amount of medical evidence in the record concerning plaintiff's alleged ailments and his resulting functional capability."). Ultimately, the responsibility for determining Plaintiff's RFC rests with the ALJ, not a physician. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). So, given this responsibility, the ALJ added RFC limitations beyond what the state agency reviewers opined because of the newer medical evidence.

One final point. Plaintiff says that the RFC is not supported by substantial evidence solely because the ALJ interpreted raw medical data. (Doc. 9). Plaintiff does not question the ALJ's RFC in any other way and in fact says that the ALJ "properly" evaluated the state agency reviewers' medical opinions. (*Id.* at 5). Nor does Plaintiff propose any additional limitations to the ALJ's RFC determination. As such, since the new records of physical examinations and an MRI reading are not raw medical data, *see, e.g., Rudd*, 531 F. App'x at 726–27, Plaintiff's concerns with the ALJ using those records in fashioning a stricter RFC are resolved. At bottom, Plaintiff "carries the burden of showing that an ALJ prejudicially erred." *Jackson on behalf of R.B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00339, 2021 WL 3508072, at *2 (S.D. Ohio Aug. 10, 2021). Plaintiff simply has not met that burden.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties  written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: July 5, 2023                                    /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE